Case number 13-2397, Dennis v. Pace Suburban Bus Service. Okay. Lawyers who can argue the case, please approach the bench and introduce yourself, please. Good morning. Brad Skafish, S-K-A-F-I-S-H, on behalf of the appellant appointed. Garrett Bang, B-O-E-H-M, on behalf of Pace Suburban Bus. And you're going to reserve some time for your rebuttal? I will. Yeah, I wanted to make a statement that Justice Taylor had some emergency surgery last week and he can't be here, but he will listen to the tape and he will participate in the decision-making process. Okay. Thank you. May it please the Court, Justices, opposing counsel, visitors. As I said, my name is Brad Skafish. I represent the plaintiff appellant. I'm sure you're familiar with the facts, but as a brief review, on May 9, 2011, Janice Dennis was assaulted by Jeffrey Moore, who was a Pace bus driver. This assault occurred when Mr. Moore observed the plaintiff riding a Pace bus in an intoxicated condition. She was visibly impaired. She was in and out of consciousness, passing out, and she was unable to get off the bus on her own. Mr. Moore didn't call law enforcement regarding this impaired rider. He didn't seek medical assistance. He didn't radio dispatch about the situation. He didn't take her to a place of safety. He didn't attempt to ascertain where her stop was or even let her off at any scheduled bus stop. Instead, he drove her around on multiple circuits of the bus route. We're familiar with the facts. Tell us what your theory of liability is. Certainly. The key to this entire case is that this conduct began on the bus, continued on the bus, and is inexorably linked to the common carrier-passenger relationship, and where the court erred at the lower court level is an accepting Pace's attempt to frame this as a private assault that occurred at a private residence when that is not an accurate characterization of what happened. Maybe if this just happened to include a Pace bus driver and a private resident who occasionally rode the Pace bus, we'd have a different situation, but that's not what we have here. So are you telling us that whenever there is a crime on a common carrier, the common carrier is responsible? I'm not suggesting that whenever there is a crime, but the controlling case, Green v. Carlinville Community School District, which I'm sure you're familiar with, states that the general rule is acts of sexual assault are outside the scope of employment. However, there are exceptions, and one is when you have common carrier liability. If an employee of a common carrier intentionally injures a passenger, the common carrier is liable, even if the employee's actions are not in the actual or apparent scope, and if they're outside of the authority and don't benefit the employer. So what you have to look at is what is important. Green was a fourth district appellate court case, and it was a two-to-one decision. How did Justice Steigman get to that point where he said, he took a leap from the rule that says that a common carrier has a heightened duty of care to that means that you have responding and superior liability for criminal or intentional acts? Where does that come from? What authority did he have? Well, as to it being a fourth district case, as I'm sure you're aware, Green also cites back to a much older Supreme Court case from 1882 for the crux of the holding, and I don't think the court focused in Green on the heightened duty, and I think that's one of the mistakes argued by the defense of the appellee and also, unfortunately, accepted by the trial court at the lower level, that the heightened duty is really for negligence cases, where you need to look at what are we going to instruct the jury as to is this ordinary care or is it this heightened duty of care that comes into play when you've got a common carrier? The Green case doesn't even focus on that. The Green case focuses on the relationship of common carrier-passenger and states in very explicit terms that if an employee of a common carrier intentionally injures a passenger, the common carrier is liable. In that case, it's not ancient, but it's 2008. It has not been overturned, and it's the case. So you don't think that's a negligence issue. That's just an agency issue. Correct, and it's important as to counts one and three, which are the intentional act towards where there's a responding act of superior theory as opposed to count two, which is the negligent supervision, which I could touch on in a minute, but I think the court at the lower level, when they found, you know, to cite some of what the court said, they focused on the higher duty and said that because Ms. Dennis wasn't riding, boarding, or alighting from the vehicle, this higher standard didn't apply. I think that's the misreading by the court, and here the situation is does the relationship of common carrier-passenger apply, and it most clearly does because if you read the Green holding, they focus on the relationship. They don't focus on was the driver still in the scope of employment,  and more importantly, what was the location of the acts. As you'll recall, in the Green case, it had to do with a bus driver who molested some children. There's no mention of whether that molestation occurred on the bus or if he took the children somewhere else, which I think would not be an unusual inference to suggest that he probably took his victims elsewhere, but the point is it's not focused on. Let me ask you this question. The highest degree of care that a common carrier has the duty to, doesn't that apply to just negligence cases? Yes, and I don't think that's the proper order. So you're telling us that we don't look at duty here. We look at relationship only. Right. You don't look to the legal phrase as to highest duty of care because that then focuses on the location. Here is the relationship of common carrier passenger, and Green doesn't look at it. That goes back to my first question to you. So you're telling us then that any crime that is committed on a common carrier, the common carrier is responsible. Is that what you want us to write? Not any crime if it's committed by an unrelated third party. Oh, no, we're talking about by an employee. I think that's the clear crux of the Green case, that a common carrier is responsible for the intentional acts of its employees committed, and what's by implication I think is the relationship. I'm sorry, do you think that that's what the problem is with Justice Cook's dissent in the Green case? Because he focuses on the concept of criminal acts or intentional acts committed by third parties, and whether or not a common carrier is responsible for that, and he rejected Justice Steigman's approach, but he said that when you're talking about an act of a third party, then the common carrier exception holds that if it's foreseeable, and they're in this relationship of passenger and common carrier, then you have responsibility, and he didn't think it went that far in this case. But is that the distinction, that it's a third party as opposed to an employee? It is. Do you think that's where Justice Cook went off the rails there? I would agree. Because he kind of went away from agency and went into negligence. Well, and if you're talking about acts of third parties, it has to be a negligence case. You're not going to tag the agent for the intentional act of somebody who, or the principal for somebody who's not their agent. You'd have to be asserting that case under a negligence theory, and then you get into what's the duty. If there's a duty, breach, cause of damages, what is the duty? You need to instruct the jury. Is it the highest degree or is it ordinary care? That's where that line of cases comes into play. This is a different situation. This is when the principal's agent commits the intentional act, and the case law that we've cited stands for the proposition that they are then liable for his act. And the key is, is there such a relationship in the first place? And I think to understand why the relationship does apply here, what's helpful is to think about, well, when wouldn't it apply? Let's take a scenario where Mr. Moore, the bus driver, and Janice Dennis, the occasional paced bus rider, meet on the street, not on the bus. And he then assaults her. Would they be responsible then? No, I wouldn't argue that. I don't believe anybody would. That's entirely unrelated. But how is this case different? Well, the relationship of common carrier passenger gave him access to an impaired rider, which is something, as we've stated and I think commonly known, it's not unusual. People take public transportation when they're not in a position to drive themselves home or walk home. So he gets access. He gets the opportunity to formulate this predatory plan. As he's driving the bus and he sees somebody, in and out of consciousness, as the bus keeps going around, stop by stop, they don't get off, he does a repeat circuit of the same stops. They still don't get off. At that point, it's very apparent to anybody paying attention that this person doesn't know where to get off, doesn't know how to get off on their own. So the access and the opportunity come into play. He's also using the instrumentality. He uses the bus to continue taking her around, to take her back to the bus storage area. Then he personally takes her off. Now, we understand your theory, but the question is, besides Steigman's case, is there anything about that in the restatement of agency? Well, there's something specifically in the restatement of torts that we've cited, Section 314. Yeah, but we're not talking about torts. You've already put torts to the side. Well, intentional torts. Okay. For counts one and three, we're away from negligence. But the restatement of torts, which I think this is implicated here, it says that the common carrier has a duty to the passengers to take reasonable action to protect them against unreasonable risk of harm. Well, and to give first aid if they have reason to know that they're ill or injured and to care for them until they can be cared for by others. I think this is a direct violation of that, when their agent is taking that person who appears to be ill, injured, or otherwise impaired and can't care for themselves. And he not only doesn't care for her until she can be cared for by others, he victimizes her and takes advantage of her. But besides Steigman's case, is there any other authority in the United States on your theory? Well, I think taking into account just the general law of agency. No, I mean, is there a case like this anywhere? I'm not aware of an exact other scenario that's a perfect analogy, any better than the case that we've been discussing, and that's why we primarily focused on that in our briefs in the oral argument. I think there are some cases cited by our opponents that are distinguishable because they focus either on situations where what you need to implicate is negligence of a third-party criminal action or, in other ways, acts that didn't have anything to do with the instrumentality, which is the bus, the train, the what have you. All right. Why don't you save some time for rebuttal? Thank you. May it please the Court, Counsel, that my name is Garrett Boehm on behalf of the Suburban Bus Service. I think what was remarkable about the oral argument we just heard is that there was no mention whatsoever of the three counts that have been alleged, battery, negligent supervision, and false imprisonment. We're here today to determine whether or not there have been facts alleged to support those three claims. Obviously, Pace suggests the answer to that question is no. Plaintiff's primary authority is the 1882 case of Chicago v. Flexman, so let's take a look at that case briefly. James Flexman decided to take a ride on a freight train in 1882. They would accept passengers, so he bought a ticket and he got on a freight train. During his ride, he fell asleep and he lost his watch. He was pretty upset about that, so he refused to leave his stop and he stayed on looking for his watch. Another passenger helped him out. It must have been a good watch. It must have been a very good watch or had some sentimental value or something. So he then asked another passenger to help him out, and during that search, the passenger said, Mr. Flexman, who do you think took your watch? And he pointed at the brakeman. That was a bad idea. The brakeman then took a railroad lantern and hit him over the head. So the Supreme Court said in those circumstances, there is a duty on behalf of the common carrier to make sure that its servants are not injuring the clientele of the employer, those passengers on that common carrier. It wasn't a case, as we have here, where after the passenger had left the service of the common carrier, that there was some type of battery. And specifically looking at the allegations of battery, there are no facts alleged that the plaintiff was in any way harmed, touched, sexually assaulted, anything of that sort, while she was on the bus. All of those allegations occur in the driver's apartment after the driver had left his shift. Well, but once the bus driver leaves the route and has a basically unconscious passenger, don't you think that the tort has started? I mean, don't you think that something is going on, that person is being imprisoned? Well, there is that suggestion of a continuing tort idea that is pleaded when the plaintiff says that Pace created the foreseeable opportunity and occasion for the assault and increased the likelihood that plaintiff would be victimized. Well, for there to be a continuing tort, the tort must have actually started on the bus. But again, there are no facts pled that she was in any way touched, hit, sexually assaulted, anything of that sort. What is pled is that she was from time to time unconscious because she was intoxicated. Not blacked out the entire time, but from time to time. And there's no allegations as to the false imprisonment claim that she was in some way restrained from getting off the bus, that the doors were locked, that she was taped up or chained up or whatever, that she was not able to leave of her own volition. Those allegations are completely missing from the false imprisonment allegation, which is why that allegation fails as well, that claim fails as well. As to the negligent supervision claim, that... So you think this is a factual issue as opposed to the legal issue that we just discussed with counsel? I mean, do you accept the idea that when the brakeman hits a flexman with a lantern, that that's outside the scope of his employment and yet there's still liability as long as he's on the train? That's what the 1882 case says. Right. And there isn't a lot of authority as to that issue. So it's a situation where you have an intentional tort or a criminal act that generally is accepted to be theoretically outside the scope of employment, but since it's a common carrier, we're going to have liability. What you're saying that saves your client in this case is that there's a factual distinction and that the tort didn't occur or the criminal act or the intentional act didn't occur at a time when she was on the bus or taking services from Pace. I think the court could hold solely on that factual distinction. But going to more of the legal question as to whether or not there could be liability if correctly pled, we cited a case that I would direct the court to, and that is Doe versus Lawrence Hall Youth Services. It's a 2012 case out of this district. And in that matter, it involved a teacher and a youth at a school or a facility for challenged children. And that teacher took that youth off, picked the youth up at the facility and took the youth off of the facility grounds, gave the youth drugs and alcohol, and then proceeded to engage in sexual acts. And in that case, and arguably there, there is a heightened duty associated with the welfare of children. And this court said there was no liability on behalf of the employer, that the sexual conduct of the teacher was outside the scope of her employment. And there was the argument there could be that even if the employment provided the opportunity for misconduct, the sexual misconduct is still outside of the scope of employment. Returning to the negligent supervision. Was that the basis of that case? Was it outside the scope of the employment or was it not? I believe it was outside the scope of employment, not that it was the factual pleadings weren't sufficient. And returning to the negligent supervision claim, again, it's not factually sufficient to be pled as a negligent supervision claim, because in order to plead such a cause of action, the plaintiff would have to plead that the employer, Pace, knew or should have known of a certain unfitness of more of the driver. And those allegations are conspicuously absent from the complaint or the third amended complaint. There is, although counsel did not mention it by name, he referenced section 314A of the restatement second of torts. And I will address that simply because that was raised in the reply brief for the first time. I would suggest any arguments based upon that restatement section are waived. But even considering it, if we were to take a look at the second illustration of that restatement section, I think it's plain that that doesn't apply. And what 314A addresses is the duty to protect passengers from unreasonable harm and to give first aid after they know they're ill or injured. But looking at the illustration, intoxication is not considered to be an illness or a disease that is worthy of first aid. And the illustration involves an apoplectic stroke. The employer thought that the stroke was actually evidence of drunkenness and left the individual there for a period of time. And in the illustration, they said the failure to address the stroke properly brought it under 314A, not the issue of drunkenness. And I asked you a question as to whether or not there is any authority, Justice Gordon, in the United States that is directly on point here. We did not locate it, but I think the briefs were generally focused on Illinois law. But the only Illinois law that we cited that we thought was remotely applicable is in the briefs. And, again, I suggest that the Chicago v. Flexman case is not dispositive here. This case is factually distinguishable, and that the dismissal of the third amendment complaint should be affirmed by this Court. Thank you very much. Thank you. A brief rebuttal, but can you talk about outside the scope of the employment? Sure. And as counsel just mentioned, he talks about citing the Dover v. Lawrence case, which does say that even if the employment provided the opportunity for misconduct, sexual misconduct still falls outside of the scope. That doesn't matter under the case we've cited. That's kind of the entire point of the holding of the Green case is that in an intentional tort scenario where the principal's agent commits an intentional tort under a common carrier-passenger relationship, they are liable regardless of the fact that it falls outside of the scope of employment and wouldn't occur with any sort of actual or apparent authority for those acts. So you're saying that the scope of employment continues even outside the bus? I'm saying that scope of employment is immaterial to a tort committed under these circumstances where you've got a common carrier-passenger relationship. When you say, does it continue, if there's a break in time, if he observed somebody, came back later, went to her house and thought, I think that person looked like she wasn't in too good a shape, I'm going to take advantage of her, that's different. But here the acts began on the bus. He doesn't get from point A to point B without observing this person on the bus, taking her from that location, taking her to a place she's unfamiliar and more likely to be victimized. As we pointed out in our brief, I don't think it even matters that Mr. Moore is the ultimate aggressor. I think if he fails to render aid, fails to call for help, fails to let her off at her stop or any stop, drive her to the bus yard in an unfamiliar location where he knows she's impaired and just dumps her out there and somebody else victimizes her, I think there's still an argument. But it's different than this case. He's violated his obligations under the restatement and he's put her in a position to be victimized because this is an impaired person. But your examples are going back into negligence. Your theory is agency. You should stick with your theory. That analogy, you're right, would get into potentially a negligence field. If I can comment on some of the arguments that Council made regarding the count. So how do you square Doe and Green? Is it because it's a private carrier? Because they refused to apply respondent superior in Doe. Well. Because they said it was outside the scope of employment. Right. So is it because the nature of the relationship is different? Is that your point? Well, the nature is different. But also Council cites Doe for one distinct holding, and that is that certain conduct is outside the scope of employment. We're proceeding under a theory on good law that says the scope of employment is not a material fact as to a common carrier or passenger relationship when the intentional fraud is committed by the agent. Right. But Justice Cunningham, our colleague, wrote in Doe that since the conduct was in no way motivated by a purpose to serve the employer, we hold that JCFS cannot be vicariously liable under the theory of respondent superior. So she said these are outside the scope of employment, and we're not going to uphold a claim of respondent superior. So I think what you have to be saying to us is the difference is that it's not a common carrier. Is that what you're saying? Well, there isn't. Right. Okay. That is the distinction, and why even the Green case, it brings into play what the common carrier holding is. It cites back to the Flexman case. They talk about there why possibly a different result could have been reached in Green because it wasn't a common carrier. It was a public carrier, but different facts. But, yes, the distinction between a common carrier. All right. So that takes care of your battery count and your false imprisonment count. But what have you got for negligent supervision? What facts do you have? As to the negligent supervision. That's count two, right? It is count two, yes. There are some specific facts that are alleged that are relevant to that count. One, we have alleged in paragraph 21 that it's common for impaired patrons to ride PACE, that PACE knew, therefore, of the need to train its drivers to handle impaired patrons. And I think that's logical in that that's one of the services that a common carrier provides. So you think that they should have a training program that tells them not to rape people? Is that what you're saying? You'd hope that telling them not to rape people would be so obvious that it would be untelling, but telling them to call for assistance, call law enforcement, call for medical assistance, not to leave somebody who's in and out of consciousness riding on the bus for well after what could have ever possibly been something. Yeah, but here the driver is the rapist, so, you know, so he should call for assistance because he's committing a wrongful act? Well, and that's where you get into the argument that I made before that I think they could be liable here under a negligence theory and count two, the negligent supervision, even if the rapist turned out to be somebody else. Well, isn't all the case law, you know, even before you were born and I was born and all these years always say that you have to have notice first in a negligence case? But notice here is established by the fact that what we've alleged is that they engaged in no training, that they didn't utilize cameras or other means of supervising what their bus drivers were doing. Well, is there a case that says that you have a duty to put a camera in a bus? You have a duty. The case wouldn't say specifically a camera. The case would say that you have a duty of ordinary care, and in this case a heightened duty because it's a common carrier, to take care of your passengers and make sure you supervise the activities of the driver that is put in a position to get these passengers from place to place. But wouldn't PACE have to have some reason to suspect that this driver was going to commit a criminal act in order for you to satisfy the notice requirement for ordinary negligence? Well, we've alleged that they engaged in no background check were not enough, and as we've cited in our brief... Well, is there something that you can tell us that a background check would have found? Well, that's where you get to the argument that we... This is on the pleadings. If we get the opportunity to take discovery, if the case moves forward, there can be more we know. We've alleged what the ultimate facts are without being able to yet lay out all of the evidence that would support count two. And I think that argument is distinct to count two. I think there's more than enough distinct facts on the other counts. This is one where some more discovery would be needed to be able to put together the pieces. Okay, well, thank you very much. Thank you. Thank you guys for giving us a very interesting case. We'll take it under advisement.